IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 3:26-cr-037 |
| | ) | |
| v. | ) | **INFORMATION** |
| | ) | |
| DANIEL JACOB PRIESTER, | ) | T. 18 U.S.C. § 1343 |
| | ) | T. 18 U.S.C. § 1349 |
| Defendant. | ) | |

**THE UNITED STATES ATTORNEY CHARGES:**

**Introduction**

At all times relevant to this Information:

1.      DANIEL JACOB PRIESTER, created D Priester Marketing LLC (hereinafter "D Priester Marketing"), and listed a business address located in Bettendorf, Iowa, in the Southern District of Iowa.

2.      Boss Tax and Accounting Services was also a business located in Davenport, Iowa, in the Southern District of Iowa.

3.      Biz2Credit, Inc. (hereinafter "Biz2Credit"), was a Delaware corporation with its principal place of business in New York. Itria Ventures LLC (hereinafter "Itria") is a Delaware limited liability company with its principal place of business in New York. Itria is a wholly owned subsidiary of Biz2Credit. Itria was a non-bank lender authorized by the Small Business Administration to originate Paycheck Protection Program loans. Itria used Internet computer servers outside the State of Iowa. Itria approved PPP loan proceeds that were disbursed from its banks in California or New York.

1

## THE PAYCHECK PROTECTION PROGRAM

4.     The United States Small Business Administration (SBA) is an Executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in economic recovery after disasters.

5.     As part of this effort, the SBA enables and provides for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

6.     The 2020 CARES Act established the Paycheck Protection Program (PPP), which was a COVID-19 pandemic relief program administered by the SBA that provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party and non-bank lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable, and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

7.     The PPP application process required applicants to submit a Borrower Application Form (SBA Form 2483) through an SBA-approved financial entity signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program

2

rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to certify: (a) that the small business was in operation on February 15, 2020; (b) the average monthly payroll expenses; and (c) the number of employees. These certifications were used to calculate the amount of money the small business was allowed to receive under the PPP. In support of the submitted "average monthly payroll" figure, the loan application recommended documentation that may include: payroll tax filings reported to the IRS such as Form 940, 941, 943 or 944 tax returns or payroll summary records; Form 1099-Misc; or certain published PPP Reports; or Annual Income and Expense statements (for sole proprietorships only); or business tax returns (Form 1040 Schedule C, Form 1040 Schedule F, Form 1120S, Form 1120, or Form 1065). SBA lenders and approved entities also commonly required additional supporting documentation to include business bank statements, personal financial statements, and other financial documentation.

8.    PPP loan applications were electronically submitted or caused to be electronically submitted by the borrower to the lender. These applications were then submitted to the SBA, which assigned each application a reference number, called an "e-tran" number. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a designated financial account of the applicant's business.

9.      Under the acknowledged program rules, the proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses. Any outside agents who assist borrowers with loan applications cannot be paid out of loan proceeds, the lender will pay the agent, and agents may not collect fees from the applicant.

10.      The submitted application required the borrower to make the following certifications:

a.      "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from the SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000."

## Count 1
### (Conspiracy to Commit Wire Fraud)

11.    Paragraphs 1-10 of this Information are re-alleged and incorporated herein.

12.    Beginning on or about February 9, 2021, and continuing until December 22, 2021, in the Southern District of Iowa and elsewhere, the defendant, DANIEL JACOB PRIESTER, did knowingly conspire and agree with others known and unknown to the grand jury, to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and in executing this scheme, causing writings, signs, signals, and sounds to be transmitted by means of wire in interstate commerce, in violation of Title 18, United States Code, Section 1343.

### MANNER AND MEANS

13.    PRIESTER and co-conspirators devised a scheme to obtain money by submission of a PPP Loan Application that contained false representations to an approved SBA lender. These representations included false figures for both the average monthly payroll amounts and the number of employees. PRIESTER affirmed, under penalty of prosecution and perjury, that his purported business was eligible for the loan and that the information in the PPP loan application was true and correct. The loan application was transmitted by means of a wire to the lender in interstate commerce via an Internet portal.

5

14. In support of the false representations in the PPP loan application, a known co-conspirator transmitted by means of a wire false and fraudulent federal IRS Form 940 and Form 941 payroll forms, and bank statements.

15. These false representations and documentation were material and influenced SBA and the approved lender to authorize the requested PPP loan.

16. After the loan was approved, PRIESTER electronically signed and transmitted by wire a Loan Agreement and Promissory Note. In the Loan Agreement, PRIESTER made false affirmations, including, but not limited to: that his business was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes; that the loan proceeds would be used to maintain payroll; that information in the Loan Agreement and Loan Application was true and correct; that he had not retained any third party agent to assist in the Loan Application; and that he would not use any loan proceeds to pay any fees or charges to any third party agent to assist in the Loan Application. PRIESTER also directed the approved lender to wire deposit the loan proceeds to a bank account to which he had access and control.

17. The approved lender transmitted by wire loan proceeds into the bank account controlled by PRIESTER.

18. Subsequently, PRIESTER and a co-conspirator transmitted by wire an application for forgiveness of the PPP loan.

## ACTS IN FURTHERANCE OF CONSPIRACY

19. PRIESTER and a co-conspirator engaged in cellular phone calls and agreed to participate in the scheme to fraudulently obtain PPP loan funds.

20. On or about February 9, 2021, PRIESTER and a co-conspirator obtained a PPP Loan Application (SB 2834) form through an Internet portal created by Itria. This portal was accessed from an Internet Protocol (IP) address in the Southern District of Iowa.

21. In this PPP Loan Application, PRIESTER and a co-conspirator falsely represented that D Priester Marketing had an average monthly payroll of $34,000 and five employees.

22. PRIESTER electronically signed this PPP Loan Application in the Southern District of Iowa and caused it to be transmitted by wire in interstate commerce to the Itria Internet portal, located outside of Iowa.

23. This PPP Loan Application was then transmitted by wire to the SBA. The SBA authorized this application and transmitted it by wire back to the Itria portal. Based on the information contained in the PPP Loan Application, specifically the average monthly payroll and number of employees, a PPP loan in the amount of $85,000 was approved.

24. Itria created a set of Loan Documents and emailed those documents to danabmarket@gmail.com, an email account controlled by PRIESTER.

25.    On March 5, 2021, PRIESTER received and electronically signed those loan documents via DocuSign. In those documents, PRIESTER directed loan proceeds to be disbursed to a JP Morgan Chase bank account that ended in 9907 and was controlled by PRIESTER. Those loan documents were transmitted by wire back to the Itria portal in interstate commerce.

26.    On March 8, 2021, loan proceeds in the amount of $85,000 were electronically transmitted from an Itria bank in California or New York, to the JP Morgan Chase bank account ending in 9907.

27.    On March 15, 2021, in violation of PPP rules, PRIESTER made electronic Cash App transfers paid out of loan proceeds to Latisha Griffin, an outside agent, of $1,000 and $5,000.

28.    On November 24, 2021, PRIESTER electronically signed, via DocuSign, a PPP Loan Forgiveness Application in the Southern District of Iowa and caused this application to be wire transmitted in interstate commerce to Itria Ventures. In this Loan Forgiveness Application, PRIESTER falsely represented that he used the loan proceeds for payroll costs. On December 22, 2021, PRIESTER's PPP Loan in the amount of $85,000 was forgiven in full.

8

This is a violation of Title 18, United States Code, Section 1349.

David C. Waterman
United States Attorney

By: _____

Richard D. Westphal
Assistant United States Attorney